539 S.E.2d 777

**STATE of West Virginia ex rel. Jessica A. JUSTICE, Petitioner,**

v.

**The BOARD OF EDUCATION OF THE COUNTY OF MONONGALIA; Jack C. Dulaney, Superintendent of Monongalia County Schools; and Jennifer Snider, Assistant Superintendent of Monongalia County Schools; the West Virginia Board of Education and Dr. Henry R. Marockie, Superintendent of Schools, Respondents.**

No. 22410.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 19, 2000.

Decided Oct. 26, 2000.

for West Virginia Board of Education and Dr. Henry R. Marockie.

**PER CURIAM:**

In the instant case we determine that the Monongalia County Board of Education, because it failed to provide certain special education services to a child, must provide an additional compensatory period of such services.

### I.

On July 18, 1994, the petitioner, Jessica A. Justice ("petitioner"), filed a petition for a writ of mandamus in this Court, invoking the original jurisdiction that is conferred by *W.Va. Const.*, Art. VIII, Section 3. The petitioner named as respondents the Board of Education of Monongalia County ("the Board") and the Board's Superintendent and Assistant Superintendent.

The gravamen of the petitioner's complaint was that the respondents were not complying with their duty to provide special education services to the petitioner's child—as they are required to do by federal law ("The Education for All Handicapped Children Act of 1975," as amended by the "Individuals with Disabilities Education Act," 20 U.S.C. § 1400 *et seq.*); and as they are required to do by state law ("Education of Exceptional Children," *W.Va.Code*, 18–20–1, *et seq.*, and West Virginia Department of Education Policy 2419: Regulations for the Education of Exceptional Students, 126 C.S.R. Series 16, "Policy 2419").

On July 20, 1994, this Court issued a rule to show cause, requiring the respondents to appear and respond to petitioner's allegations—"unless sooner mooted by provision of the services sought to be compelled." (*Quoting* this Court's order.)

On November 2, 1994, this Court heard oral argument on the rule to show cause. On November 4, 1994, this Court issued an order appointing Kanawha County Circuit Judge Irene Berger as a special master, to conduct evidentiary hearings and to make recommendations to this Court regarding the following issues:

R. Clarke VanDervort, Esq., Charleston, West Virginia, for Petitioner.

Nancy W. Brown, Esq., James M. Wilson, Esq., Steptoe & Johnson, Clarksburg, West Virginia, Attorneys for Monongalia County Board of Education.

Charles R. Bailey, Esq., Bailey & Wyant, PLLC, Charleston, West Virginia, Attorney

(1) whether the respondent, Board of Education of the County of Monongalia, has performed its legal obligations under the current Individualized Education Plan ["IEP"] at issue;

(2) whether corrective measures can be undertaken by the respondent, Board of Education of the County of Monongalia, to achieve compliance with its legal obligations under the current IEP; and

(3) whether changes to the current IEP are necessary, in conjunction with the development of a new IEP, in order for the respondent, Board of Education of the County of Monongalia, to comply with its legal obligations under applicable statutes and regulations.

Subsequently, in proceedings before the special master, the petitioner sought to engage in discovery regarding events and matters that the respondents claimed were not relevant to the issues before the special master. Upon the respondent's motion for a protective order, the special master ruled on September 19, 1995, that the effective period of the IEP for the petitioner's child—and the relevant period of time for purposes of the issues before the special master—was from June 8, 1993 to August 4, 1995.

The special master ruled that because of the limitations in this Court's order referring the case to the special master, the petitioner's discovery must be relevant to that time period.

On October 12, 1995, the petitioner asked this Court to overrule the special master's ruling on the protective order motion, and to broaden the issues and time frame to be addressed in the discovery before the special master. On November 2, 1995, this Court refused that motion, without prejudice to petitioner's filing a motion seeking to amend her original mandamus petition.

On March 14, 1996, the petitioner filed with this Court a motion for leave to amend and supplement her original petition; to add the West Virginia State Board of Education and its State Superintendent of Schools as respondents; to revise the questions presented to the Special Master; and to conduct expanded discovery. On March 28, 1996, this

Court denied all of the petitioner's requests, except her request to add the State respondents as parties.

During this period of time, the parties engaged in discovery which it is not necessary to detail. Also unnecessary to detail are a series of continuances and cancellations that added substantial time to the proceedings. Ultimately, the special master decided to appoint independent experts to report to the master; and the special master then held hearings regarding the opinions of those experts.

Finally, on July 7, 1999, the special master (who we feel proceeded as expeditiously as possible, given the difficulties posed by these proceedings) issued a report to this Court.

In her report, the special master found that the Board did not fully perform its legal obligations under the IEP during the relevant time period; and that the Board's efforts to "make up" the omitted services, because of the nature of age-appropriate educational services, was not the same as providing the services when they should have been provided in the first instance. The special master recommended that an extension of the period of time that the Board must be responsible for providing educational services to petitioner's child after their statutory obligation expires would be appropriate, to compensate for the Board's partial failure to provide services. The special master also found that the petitioner's child strongly needed a new IEP, including a new medical evaluation and health plan as part of that IEP.

Thereafter, on July 20, 1999, the Board filed suit in federal district court, seeking declaratory and injunctive relief regarding the Board's obligations under IDEA toward petitioner's child—for the period of time from June 10, 1999 forward. The parties were referred to mediation, which was unsuccessful. The federal court case was subsequently dismissed by the court, by order dated September 25, 2000, on the grounds that the Board had failed to exhaust its administrative remedies.

On April 18, 2000, following the unsuccessful conclusion of the federal court mediation

process, the petitioner filed a multi-faceted motion in this Court. In this motion, the petitioner alleged that there has been a 14-year history of inadequate, bad-faith, malfeasance by the respondents with respect to providing services to her child—and she asked this Court: (a) to appoint third-party providers to provide education services for the petitioner's son at the Board's expense; (b) to appoint a monitor to oversee the provision of services to her son; and (c) to require the respondents to pay the petitioner for all of the services that she has performed and obtained that the respondents should have provided to her child in the past.

The respondents have replied to the petitioner's motion by reiterating their contention that since the petitioner initially filed this action, the respondents have made sincere and extraordinary efforts to remediate any past inadequacy in their provision of services to the respondent's son—and to provide such services on an ongoing basis—but that the petitioner's lack of cooperation with the respondents has made these efforts unsuccessful.

The respondents and the petitioner have submitted voluminous documentary materials, etc. in support of their contentions.

## II.

■ As we stated in *State ex rel. West Virginia Deputy Sheriff's Ass'n, Inc. v. Sims,* 204 W.Va. 442, 444, 513 S.E.2d 669, 671 (1998):

This is an original jurisdiction proceeding. Consequently, we are not directly reviewing a ruling or determination by a lower tribunal. Our standard for original mandamus jurisdiction has been recently stated as:

A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy. Syllabus Point 1, *State ex rel. Billy*

*Ray C. v. Skaff,* 190 W.Va. 504, 438 S.E.2d 847 (1993).

(Citations omitted.)

## III.

Upon our review of the five banker's boxes full of documents, depositions, videotapes, and audiotapes that were submitted to the special master in this case, it is clear that the limited purpose that underlay this Court's initial acceptance of the mandamus petition in the instant case has been less and less served, as more and more time has passed.

By setting the instant case for a prompt "show cause" hearing "unless sooner mooted by provision of the services sought to be compelled," this Court clearly hoped that the Board would assess, and if appropriate augment, its provision of services to the petitioner's child—and thereby resolve the petitioner's complaints.

Unfortunately, this did not occur—for reasons about which the parties strongly disagree.

In November of 1994, at the initial oral argument in the instant case, it became clear that disputed factual issues underlay both the petitioner's complaint and the Board's response to that complaint—including: whether the Board had been doing all that it was legally required to do; what should and could be done to remedy any such deficiency; and whether a new IEP was needed as part of such a remedy. Consequently, we appointed a special master to address these issues, to aid this Court in making an appropriate ruling.

We recognize that this case has radically deviated from the time frame that we originally contemplated as appropriate. Nevertheless, now that we have a report from the special master on the issues that we identified, we must—despite this deviation and the time that has passed—make as appropriate as possible a resolution of this case.

There is no dispute between the parties as to the legal duty of the Board (and if the Board fails to do its duty, of the state respondents) to provide appropriate special education services for the petitioner's child. *See generally State ex rel. Boner v. Kanawha*

*County Board of Education,* 197 W.Va. 176, 475 S.E.2d 176 (1996).

Additionally, the record fully supports the finding by the special master that—for reasons that were not the petitioner's "fault"—the Board failed to fully comply with its legal duty to provide special educational services to the petitioner's child during the period of time that the special master was addressing: June 8, 1993, through August 4, 1995.

The record also supports the special master's factual finding that corrective measures cannot themselves fully "unring the bell" of the Board's failure during that period; and the record supports the master's finding that a new IEP for the petitioner's child, including a medical evaluation, is necessary.[1]

It would be erroneous for this Court to go beyond these facts and beyond the limited scope of issues that we have adhered to in the instant case.

Based on the foregoing reasoning, we grant the requested writ of mandamus as moulded, and make the following ruling:

1. We accept the special master's report, and commend her for her services in this matter.

2. We require both parties to fully cooperate in the prompt creation of a new IEP that will serve as the basis for the BOE's future provision of educational services to the child. In conjunction with the development of a new IEP, the petitioner must permit a full physical and psychological examination of her child. If any conflicts or problems arise in the IEP creation process, or in the adequacy or delivery of services after the IEP is created, these problems must be addressed in an appropriate administrative[2] or trial

court proceeding, if necessary—and not by further proceedings in the instant case.

3. We require the respondents to be responsible for providing special educational services for the petitioner's child for 2 additional years beyond the period of time that is statutorily required, to compensate for past deficiencies in the BOE's provision of services.[3]

■ 4. Because the petitioner has prevailed on certain claims for relief that she has asserted in this mandamus action, she is entitled to an award of her reasonable attorney fees for those portions of the claims upon which she prevailed. The petitioner shall within 90 days of the date of the filing of this opinion submit a detailed fee request and supporting affidavit(s) to the special master, sitting as a judge, who shall have the authority to determine an award of appropriate attorney fees pursuant to the principles enunciated in *State ex rel. West Virginia Highlands Conservancy, Inc. v. West Virginia Div. of Environmental Protection,* 193 W.Va. 650, 458 S.E.2d 88 (1995). Petitioner's fee request should include the date, duration, and nature of each attorney service and charge for which reimbursement is sought—including identification of the claim(s) for relief to which the service is related. The respondents may within 30 days file a response to the petitioner's fee request; and the petitioner may within 20 days of such response file a reply. The parties are strongly encouraged to meet and attempt to agree upon an attorney fee amount.

We deny the petitioner's requests: (a) for an award of "costs" for the petitioner's provision of past services for her child; (b) that we require that services for her child be

---

1. Additionally, there are two other facts that are well-supported in the record. The first such fact is that the petitioner is a deeply loving and caring parent. Her consistent dedication to her child's welfare is exceptional and superlative. The second fact is that personnel of the Board of Education of Monongalia County have worked hard and well, when it has been possible, to provide special education services to the petitioner's child. The failure (to date) of the parties to this case to cooperate effectively does not adversely reflect on the dedication or competence of the petitioner *or* the Board's personnel.

2. West Virginia Department of Education Policy 2419: Regulations for the Education of Exceptional Students, 126 C.S.R. Series 16 establishes procedures for addressing disputes about the provision of special education services.

3. We emphasize that our ordering of this remedy arises out of the unique facts of this case—and is not to be construed as either an endorsement or disapproval of the appropriateness of an award of such relief in other cases.

provided by third parties; (c) and that we appoint a monitor for the provision of services to her child.

Justice SCOTT, deeming himself disqualified, did not participate in the decision of this case.

## IV.

The writ of prohibition is granted as moulded.

Writ Granted as Moulded.